**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION**

ARCELIA MUNIZ, EVENCIO GARCIA, and
AGUSTIN GARCIA GONZALEZ                                                PLAINTIFFS

v.                              No. 1:07-CV-1073

PITTMAN PROPERTIES LIMITED PARTNERSHIP #1;
D&M PITTMAN, INC.; DAWOOD AYDANI; and
MICKEY H. PITTMAN                                                       DEFENDANTS

and

PITTMAN NURSERY CORP.                                                CROSS-PLAINTIFF

v.

PITTMAN PROPERTIES LIMITED PARTNERSHIP #1;         CROSS-DEFENDANTS
D&M PITTMAN, INC.; DAWOOD AYDANI;
MICKEY H. PITTMAN; LYNN AYDANI;
and LAWANDA JONES

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendants' Motion for Summary Judgment filed by D&M Pittman, Inc., Pittman Properties Limited Partnership #1, and Mickey H. Pittman (Doc. 194)[1]; Defendants' Brief in Support (Doc. 195); Defendants' Statement of Material and Undisputed Facts in Support (Doc. 196); Plaintiffs' Response (Doc. 199); Plaintiffs' Brief in Support (Doc. 200); Defendant Pittman Nursery Corp.'s Response and Brief in Opposition (Doc. 201);

---

[1] Defendant Dawood Aydani, who is *pro se* as of the date of this Order, did not join in this Motion for Summary Judgment, nor did he file any response. Mr. Aydani was notified by mail of the status hearing scheduled for May 20, 2011. Should Mr. Aydani fail to appear at the hearing, the Court will schedule a subsequent hearing at which his appearance will be required and secured, if needed.

Defendant Pittman Nursery Corp.'s Response to Plaintiffs' Statement of Undisputed Facts (Doc. 202); and Defendants' Reply to Plaintiffs' Response (Doc. 205).

For the reasons explained herein, Defendants' Motion for Summary Judgment (Doc. 194) is **DENIED**.  Discovery completion and trial dates will be set at the Status Conference on May 20, 2011.

**I. Background**

Plaintiffs are Mexican nationals who worked from 2004-2007 as temporary farm workers in Magnolia, Arkansas.  Plaintiffs' employer in Arkansas during this time was Pittman Nursery Corp. ("PNC"), a commercial horticultural business that sponsored the Plaintiffs' H-2A non-immigrant visas for seasonal farming work.  Plaintiffs filed their original Complaint on August 23, 2007 (Doc. 1), amended their Complaint on December 16, 2008 (Doc. 43), and then amended it again on May 18, 2010 (Doc. 132).  The crux of Plaintiffs' Second Amended Complaint is that Defendant Dawood Aydani, a senior employee and officer of PNC in charge of recruiting and supervising PNC's migrant labor force, extorted cash from the wages of the individual Plaintiffs and a class of migrant farm workers similarly situated.  Defendant Aydani's alleged "kickback scheme," as Plaintiffs refer to it, involved him demanding up to $1000 in cash from each worker in exchange for allowing the workers to keep their jobs at PNC and secure future employment there in the coming season. (Doc. 132, p. 4)

2

PNC is part of a larger family-owned and family-operated horticultural business made up of four people: Defendant Mickey H. Pittman and her three adult children, Donna Pittman King, David Pittman, and Dixie Pittman.

The Defendants are all part of the Pittman family business. The evidence reflects that the four members of the Pittman family are the sole owners of the Defendant companies and had a close, dependent relationship with each another and with Defendant Dawood Aydani, the supervisor accused of abusing, threatening, and extorting money from Plaintiff farm workers. For her part, the mother, Mickey H. Pittman, is the sole shareholder of D&M Pittman, Inc. ("D&M"), an Arkansas corporation that is the general partner of Pittman Properties Limited Partnership #1 ("PP1") and Pittman Properties Limited Partnership #2 ("PP2"[2]). David and Dixie Pittman have been president and vice-president, respectively, of D&M. PP1 is an Arkansas limited partnership that owns land and manages real estate for the benefit of the family business. Mickey, David, and Dixie Pittman own and operate PP1. David, Dixie, and Donna Pittman own and operate PP2. Donna is the sole shareholder of PNC, which is the arm of the family business that hires, pays, and oversees workers in planting and raising trees and shrubs for sale to customers. PNC houses its migrant workers on lands owned by PP2, while PNC's farming operation takes place on

---

[2] PP2 is not a party to this action.

land owned by PP1. There is deposition testimony that Mickey Pittman trusts and loves Mr. Aydani like a son (Doc. 194-1), and that after Donna Pittman fired Mr. Aydani on behalf of PNC for the alleged misconduct that is the subject of this lawsuit, Mr. Aydani was immediately re-hired by other Pittman family members acting through D&M and PP1.

Since the onset of litigation, the parties entered into a restraining order which directed Mr. Aydani to have no contact directly or indirectly with any named Plaintiff or potential class member (Doc. 21); yet two motions for contempt of that restraining order were filed by Plaintiffs and PNC against Aydani and the other Defendants (Docs. 23 and 92) which appear to stem from Aydani's continuing employment or, at minimum, personal involvement with the individuals or businesses connected to the Pittman family business. Though the Court never ordered contempt sanctions against Aydani and the other Defendants for alleged contacts with PNC's Mexican migrant workers, it is clear that Aydani's continued employment and personal association with certain members of the Pittman family have kept Mr. Aydani squarely in the middle of this litigation and the ensuing family drama.

Plaintiffs allege a family-wide conspiracy to share in the ill-gotten gains borne of Mr. Aydani's threats and extortion. Though Plaintiffs admit that they are uncertain how the conspiracy to extort money was structured among the Pittman family and within

4

the family business, they request that a jury be allowed to hear the evidence and make its own judgments.  Plaintiffs were able to work out a settlement of their individual and class claims against PNC only, which was approved by the Court on January 18, 2011 (Docs. 188-189).[3]

Following PNC's settlement with Plaintiffs, Cross-Plaintiff PNC went on the offensive against the other Defendants, claiming that PNC was also a victim of Aydani and the other Defendants' collusion.  Accordingly, PNC amended its Answer on April 25, 2011 (Doc. 206), and asserted cross-claims against Defendants Dawood Aydani, his wife Lynn Aydani, D&M, PP1, Mickey Pittman, and Lawanda Jones, PNC's bookkeeper, for violations of the RICO Act, RICO conspiracy, breach of fiduciary duty, fraud, negligence, tortious interference with business expectancy, and common law conspiracy.[4]  PNC also asserted a cross-claim for conversion against Mr. and Mrs. Aydani, D&M, PP1, and Mickey Pittman for destruction of PNC's farm watering system, appliances, cabinetry, sprinkler system, and swimming pool in the nursery farm house, as well as theft of

---

[3] The Court has removed PNC from the caption of the case as a "Defendant" and lists PNC as a "Cross-Plaintiff" only, pursuant to PNC's settlement of all its claims with Plaintiffs.

[4] PNC's cross-claims are not the subject of this Motion for Summary Judgment.

5

certain trees, shrubs, and seeds.[5] Finally, PNC asserted joint and several liability against D&M, PP1, and Mickey Pittman through a corporate veil-piercing theory of liability. Defendants PP1, D&M, Mickey Pittman, and Lawanda Jones moved on May 9, 2011, to Strike PNC's Second Amended Cross-Claims and Dismiss Cross-Claims (Docs. 208-209). PNC has yet to respond to these Motions to Strike and to Dismiss, and the Court will reserve judgment on these motions until responses are filed.

The Motion for Summary Judgment now before the Court (Doc. 194) concerns only the remaining causes of action brought by Plaintiffs: claims under 18 U.S.C. § 1962 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), for extorting Plaintiff's wages and converting them to Defendants' own use; the common law tort of conversion; violations of the Arkansas Minimum Wage Act pursuant to Ark. Code Ann. § 11-4-210; and negligent supervision of Mr. Aydani.[6]

## II.  Standard of Review

In determining whether summary judgment is appropriate, the moving party bears the burden of establishing both the absence of

---

[5] Among other allegations, PNC also claims that Mr. Aydani "concealed in the ground so-far unidentified chattels (probably cash and possibly belonging to PNC), which he then dug up and removed upon his departure related to this lawsuit." (Doc. 206, ¶ 192).

[6] Plaintiffs' FLSA claims were dismissed on July 6, 2010 (Doc. 151).

a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212-13 (8th Cir. 1998) *(*citing *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983)*.* In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

**III. Discussion**

**A.   RICO**

The evidence before the Court shows that the Pittman family business is an intertwined structure of corporations and partnerships, in which a few family members oversee and share in the investments and profits that benefit them all. Reviewing the facts in a light most favorable to the Plaintiffs, as is required, the issue of the case is whether Mr. Aydani, the alleged extortionist, acted alone or in collusion with the other

7

Defendants.

Separating Mr. Aydani from the other Defendants is difficult, as Mr. Aydani has had a close familial and business relationship with the members of the Pittman family for a number of years and has held fiduciary positions of trust and responsibility in the family business as a whole. Mr. Aydani admittedly was directly employed by PNC in recruiting, managing, and paying the Mexican temporary laborers on whom the business is dependent; however, it is impossible at this point to say that PNC and the other Defendants are each so distinct in their business purposes, operations, and assets that they could not have openly or tacitly been a part of Mr. Aydani's alleged kickback scheme. Indeed, there is evidence that Defendant Mickey Pittman shared in the profits, specifically cash profits, made by PNC, and D&M and PP1 managed property and received rents from PNC for land use. Mrs. Mickey Pittman, D&M, and PP1 therefore were dependent on the profitability of PNC's business operations, and assets flowed among all the Defendants.

The Pittman nursery business is a family business, and the officers and shareholders of the varying business entities are the same four individuals, Mickey, Donna, David, and Dixie Pittman. Consequently, Defendants' insistence that Mr. Aydani was "employed by PNC" when engaged in the alleged extortion amounts to a distinction without a difference (Doc. 194, ¶ 4). Defendants argue

8

that "[n]either Mrs. [Mickey Pittman] Ketchum nor anyone on behalf of PP1 or D&M was present when Aydani allegedly asked Plaintiffs for money or when Plaintiffs paid him." (Doc. 195, p. 5)  But this assertion does not negate the possibility of there being both an "enterprise" and a "conspiracy" to illegally extort money, as must be proven under the RICO statute to show a violation. 18 U.S.C. § 1962 (c) and (d).

    The fact that Defendants deny knowledge of the alleged kickback scheme itself and insist that all the assets they shared in the family business are not tainted by the scheme is not dispositive on summary judgment.  There exists a genuine issue of material fact on this point, and a jury should decide the veracity of Plaintiffs' and Defendants' competing claims.  There is evidence that Defendant Mickey Pittman split quantities of cash with Defendant Aydani on a regular basis during the relevant time period and transported cash from the nursery to Pittman family business offices (Docs. 194-1, 194-4, 194-6, 194-7).  There is also evidence that Mickey Pittman and D&M are one in the same, and that D&M is also the managing partner for PP1 (Doc. 194-4).  There is evidence that PP1 receives payments from PNC through rent, among other means (Doc. 200-1).

    It is clear that the individual Plaintiffs, Mexican migrant workers with little knowledge of English or the laws of this country, do not have a working understanding of the Pittman family

9

business, including the identity and structure of D&M and PP1, the entities that share assets with PNC (Doc. 194-1). Even so, Plaintiffs have established that there is a genuine issue of material fact as to whether Plaintiffs' money, allegedly obtained through unlawful threats and extortion, was ultimately shared, knowingly or unknowingly, by the Defendants.

Plaintiffs have presented evidence that money, employment, and business responsibilities apparently flowed freely among Mr. Aydani, PNC, D&M, PP1, and the members of the Pittman family, and it is therefore evident that a genuine issue of material fact remains regarding the existence of a conspiracy and a violation of the RICO statute.

**B.   Conversion and Arkansas Minimum Wage Claims**

Defendant Dawood Aydani has not yet been deposed in this case. Considering that his alleged acts and omissions constitute the basis for this lawsuit, summary judgment is improper at this stage in the litigation for this reason alone. Nonetheless, based on the evidence presented thus far by the parties, summary judgment of Plaintiffs' tort claim for conversion of their wages is denied due to the existence of a number of genuine issues of material fact.

First, there exists a genuine issue of material fact as to whether Mr. Aydani threatened and extorted cash from Mexican migrant workers employed by PNC, which if proven would affect Plaintiffs' minimum wage under Arkansas law for the relevant time

period. Next, there is a genuine issue of material fact concerning Mr. Aydani's personal and business relationship with some members of the Pittman family, and the trust and responsibility invested in Mr. Aydani in the running of the family business. According to the facts presented, cash from the nursery business was shared freely among Mr. Aydani, Mrs. Aydani, Mrs. Mickey Pittman, other members of the Pittman family, and the corporate and partnership entities tasked with managing business assets. Finally, there is a genuine issue of material fact regarding whether officers and employees of the Defendant companies made attempts to conceal the evidence of cash splitting from other family members, either by logging the splits in secret, hiding the evidence of splits using technology, or destroying evidence of the transactions. (Docs. 194-2, 194-3, 201-6)  The source or sources of the cash splits are also vigorously disputed by the parties and, being material to the claims made by the Plaintiffs, bar summary judgment.

**C.   Negligent Supervision**

Because there exist genuine issues of material fact regarding whether or not Defendants, including Defendant Aydani, colluded in extorting cash from Plaintiffs, and because of the fluidity of control, management, and authority over the family business exerted by the Defendant companies and individuals, the Court finds that a genuine issue of material fact exists regarding the employment relationship between Mr. Aydani and PNC, D&M, PP1, and Mickey

11

Pittman.  For these reasons, and for those explained above, summary judgment is inappropriate at this time for Plaintiffs' negligent supervision claim.

**IV. Conclusion**

Defendants' Motion for Summary Judgment (Doc. 194) is **DENIED**. Discovery completion and trial dates will be set at the Status Conference on May 20, 2011.

**IT IS SO ORDERED this 12th day of May 2011.**


/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge

12